**NOT FOR PUBLICATION**

FILED

JUL 22 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

GABRIELA GIAMBALVO, an individual,

Plaintiff - Appellant,

v.

CITY OF TEMPE, a municipality;
ANTHONY NARDINI, an individual,

Defendants - Appellees.

---

No. 24-4860

D.C. No.
2:22-cv-01856-SMB

MEMORANDUM[*]

---

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted May 14, 2025
Pasadena, California

Before: OWENS, BENNETT, and H.A. THOMAS, Circuit Judges.
Partial Dissent by Judge BENNETT.

Gabriela Giambalvo appeals from the district court's summary judgment in

her action under the Americans with Disabilities Act ("ADA") and the

Rehabilitation Act ("RA") alleging wrongful arrest and failure to provide a

reasonable accommodation. We have jurisdiction under 28 U.S.C. § 1291. As the

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

parties are familiar with the facts, we do not recount them here.  We affirm as to the wrongful arrest claim and reverse as to the reasonable accommodation claim.

1. Under the ADA and RA, a wrongful arrest claim arises when "police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity."  *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, *cert. dismissed in part*, 575 U.S. 600 (2015).  Here, Giambalvo's undisputed moving violations, along with her symptoms of dilated pupils, rebound reaction to light, lack of convergence, and eyelid tremors, gave police probable cause to arrest her on suspicion of driving under the influence, even though that charge was ultimately dropped.  *See* Ariz. Rev. Stat. § 28-1381(A)(1).  As an arrest supported by probable cause is lawful, *see District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018), summary judgment was proper as to Giambalvo's wrongful arrest claim.

2. A reasonable accommodation claim arises where police "fail to reasonably accommodate [a] person's disability in the course of [an] investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees."  *Sheehan*, 743 F.3d at 1232.  "Assessing whether an entity 'provided appropriate auxiliary aids where necessary' to afford effective communication 'is a fact-intensive exercise.'"  *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 867 (9th Cir. 2022) (quoting *Updike v. Multnomah County*, 870

F.3d 939, 958 (9th Cir. 2017)); *see also Mayfield v. City of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025) ("[T]he reasonableness of an accommodation is ordinarily a question of fact." (quoting *Sheehan*, 743 F.3d at 1233)).  "The trier of fact must 'weigh [several] factors,' including 'the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place.'" *Bax*, 52 F.4th at 867 (quoting *Updike*, 870 F.3d at 950).  "[I]n the specific context of *arrests*," it is also relevant "whether any 'exigent circumstances' surrounding the plaintiff's encounter with law enforcement would render a proposed reasonable accommodation impracticable." *Mayfield*, 131 F.4th at 1110 (quoting *Sheehan*, 743 F.3d at 1232).

The Tempe Police Department employs a software application to enable officers to contact virtual interpreters in the field, and the Department instructs officers to use the application to communicate with deaf members of the public. *See Updike*, 870 F.3d at 955 (reversing summary judgment where a county denied a deaf individual an ASL interpreter during his booking and pretrial detention, and observing that the county "ha[d] a contract with [a language services company] for interpreting services").  The investigating officer knew about the application and had it on his phone.  However, the officer made no attempt to contact an interpreter.  *Compare id.* at 9555–56 (noting "the County has not put forth

24-4860

evidence showing that it looked into whether . . . [the] accommodation could be granted"), *and Duvall v. County of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001) ("[T]he record strongly suggests that the County would have been able to provide videotext display for [the plaintiff's] hearings if the defendants had . . . investigated the availability of real-time transcription."), *with Mayfield*, 131 F.4th at 1112 (emphasizing that the officer "explicitly *did* request a sign language officer very early in the encounter . . . but no such officer was available at the time of the DUI stop, nor was one available later when [the plaintiff] was booked at the DUI processing facility" (internal quotation marks omitted)).

Moreover, "a reasonable jury could conclude that [the] communication" Giambalvo did receive "was not adequate to ensure that [she] could communicate as effectively as non-hearing-impaired individuals." *Updike*, 870 F.3d at 956. The record, including the body camera footage, viewed in the light most favorable to Giambalvo, indicates that Giambalvo may have suffered a "'real hindrance' in her ability to exchange information" about material matters such as the nature of her disability, the perception that she was intoxicated, and the charges against her. *Bax*, 52 F.4th at 867 (citation omitted). Because determining whether Giambalvo was adequately accommodated "requires sifting through a number of facts" that remain disputed, *Updike*, 870 F.3d at 956, summary judgment was improper as to the reasonable accommodation claim.

4

5

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[1]

---

[1] Each party shall bear its own costs on appeal. *See* Fed. R. App. P. 39(a)(4).

24-4860

FILED

JUL 22 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Giambalvo v. City of Tempe*, No. 24-4860

BENNETT, Circuit Judge, dissenting in part:

Because I would affirm the district court's grant of summary judgment to Defendants on the reasonable accommodation claim, I respectfully dissent in part.

"In assessing whether there has been a violation of the obligation to provide reasonable accommodations to a deaf individual, . . . 'the test is whether an individual has received an auxiliary aid sufficient to prevent any "real hindrance" in her ability to exchange information.'" *Mayfield v. City of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025) (emphasis omitted) (quoting *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 867 (9th Cir. 2022)). In the context of an arrest, this inquiry focuses on whether the plaintiff could "effectively communicate in all respects that were *material* to the accomplishment of the *relevant tasks*" "entailed in the stop and arrest." *Id.* at 1110–11 (emphases added).

I believe the body camera footage establishes that Gabriela Giambalvo and the officer effectively communicated in all material respects throughout their encounter and forecloses any genuine factual dispute on this question.[1] The video

---

[1] "[B]ecause [Giambalvo] has never contended that the video footage is inaccurate or unreliable, we 'view[] the facts in the light depicted by the videotape,'" *Mayfield*, 131 F.4th at 1104 (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)), while "constru[ing] any ambiguities in the video footage in 'the light most favorable' to [Giambalvo]," *id.* (quoting *Orellana v. Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021)).

shows that the officer managed to cure nearly all instances when Giambalvo expressed difficulty understanding, using gestures, visual demonstrations, lipreading, and references to written text.

The video also shows that the two times the officer did not cure hindrances in Giambalvo's understanding, he accommodated her by simply proceeding to a different task. First, during the physical testing portion of the Drug Recognition Exam (DRE), Giambalvo informed the officer that her hearing aid was "totally dead now" and that she had become fully reliant on lipreading, prompting him to end that portion of the DRE.[2] Second, during the officer's questioning of Giambalvo, he asked, "Do you think drugs impaired your ability to drive at all?"; Giambalvo replied, "What?"; and the officer responded, "Ah, it's fine, don't worry about it," and ended his questioning.

I disagree with the majority's suggestion that the potential availability of a virtual ASL interpreter precludes summary judgment on the reasonable accommodation claim. We have declined to hold that a deaf individual "necessarily [i]s entitled to have an ASL interpreter as a matter of course to achieve effective communication with [a public entity's] employees or that the [entity] should be

---

[2] Some tests required Giambalvo to close her eyes or face away from the officer. All the tests that Giambalvo performed during the physical testing portion of the DRE appear to be the same field sobriety tests that she performed before her arrest—which she was instructed on while her hearing aid was working.

2

subject to liability for failing to provide one." *Updike v. Multnomah County*, 870 F.3d 939, 958 (9th Cir. 2017). Again, "the test is whether an individual has received an auxiliary aid sufficient to prevent any 'real hindrance' in her ability to exchange information." *Mayfield*, 131 F.4th at 1110 (quoting *Bax*, 52 F.4th at 867). Even crediting Giambalvo's testimony that the officer's hand gestures were not ASL signs, I believe the video establishes that other aids—including "lip-reading," "visual demonstration," and references to "physical copies of the pertinent consent documents"—permitted effective communication across all material aspects of Giambalvo's arrest and processing. *Id.* at 1111.

Given the video evidence, I do not believe any reasonable jury could conclude that Giambalvo experienced any "real hindrance" in her communication that could support her reasonable accommodation claim. Thus, I respectfully dissent in part.

3